This suit by a widow against her deceased husband's estate to recover on his promise to pay her $50 a month for support during separation was transferred to chancery from the law courts because of the baron et femme relation at the time of the alleged promise.
The parties were married in 1893 in California. They came to New York and twenty-eight years later, in 1921, the wife quit the husband and went back to California. She thought him guilty of adultery and charged him with it; she also says she was maltreated; they quarrelled, she sickened and went on retreat to recuperate. Returning to New York the wife took separate quarters, told her husband, in his quarters, she was going back to California and the next day was on her way. Her testimony, which is incompetent, and that of their son, is that when she told him she was going she asked him if he would do anything towards her support while she was in California and he asked her what *Page 587 
she wanted; she said she thought it would be right if he sent her $50 per month and he said: "All right, I will do that." That is the supposed contract upon which suit was brought eight years afterwards and after the death of the husband in 1928. He sent her newsy letters, enclosing $30, on six occasions in 1923 and 1924, and visited her once or twice about that time, but that was all. He never sent her $50 at any time, nor was the supposed promise and his supposed derelictions ever intimated in his letters or in hers, or verbally when he visited her; there is no proof whatever that the wife ever adverted to the supposed contract. The indifference brings pause and the deferred suit, until after death, causes suspicion as to the good faith of the action. Here the wife was determined to leave for, in her eyes, justifiable cause. The son says his father acquiesced. What the immediate circumstances were that now influence the son in interpreting his father's conduct as assenting, is not shown, but it is fair inference that if the husband agreed it was simply a submission to the inevitable, for there is testimony that he was in a remonstrative mood, and that he bid her goodbye perfunctorily on her departure the next day. The spoken words, if spoken, in response to the wife's suggestion of $50 a month, "all right, I will do that," were not contractual and were not understood to be obligatory; it was an allowance. The years of silence by the wife is convincing of that. There was no agreement to separate. The wife was going and the husband could not stop her. The spoken words, if spoken, were not in mutual agreement to live separately, and $50 a month was not in discharge of the husband's marital obligation during separation mutually agreed upon. A contract is not made out. The associated circumstances deny the existence of a contract. To recover against the estate of the dead upon the promise of the dead, the living must establish the promise by testimony clear and convincing.
The bill will be dismissed. *Page 588